## WOODWARD v. ELLIOTT.

1. In an action for partition of an intestate's estate, the widow was made a party-defendant and duly served; and while the complaint did not state that she was the widow nor define her interest, but, on the contrary, seemed to class her as one of the children, yet throughout the progress of the case her share was treated as a third, she took part in the partition proceedings, and named one of the commissioners. *Held*, that she was bound by the sale which was ordered in the cause.

2. This defendant knew, or had the opportunity of knowing, everything that was done in the progress of the cause, and therefore no ground exists for opening the order of sale.

3. In November, 1885, the Circuit Judge, then under assignment to the Circuit, and while in the county where the land lay, had power at chambers to hear a case of partition and to render judgment therein, without the consent of all the parties to the cause.

4. But, it seems, that he has not such power while in a county other than that in which the land to be partitioned, or some part thereof, is situated.

Before WALLACE, J., Georgetown, November, 1886.

The opinion states the case.

*Mr. R. Dozier*, for appellants.

*Messrs. Johnsons & Quattlebaum*, contra.

October 10, 1887. The opinion of the court was delivered by

MR. JUSTICE McIVER. Some time in the year 1882, June Woodward, the elder, departed this life intestate, leaving as his heirs at law, his widow, Silla, and the six children named as such in the complaint, being seized and possessed, at the time of his death, of a certain tract of land situate in Georgetown County, containing about 400 acres, which is the subject matter of controversy in the present case. In July, 1884, an action was commenced by two of these children, viz., Amelia and Susan, against said Silla Woodward, the widow, though she was not named as such in the summons or complaint, or in any of the subsequent proceedings, but, on the contrary, from the phraseology of the complaint, seems to have been regarded at that time as one of the children of June Woodward, sr., as well as against the children of said June and the present defendant, Elliott,[1] for the purpose of partitioning said lands. None of the defendants answered, and on the 12th of November, 1884, Judge Kershaw granted an order for a writ of partition to issue, to be directed to three commissioners, directing them to partition the said land amongst the heirs of said June Woodward, according to their respective interests therein.

No further proceedings being had under this order, Judge Fraser, on May 8, 1885, granted another order, wherein, after reciting that the writ of partition previously authorized had been suspended, "pending a negotiation between the parties looking to a family settlement, which has not been effected," and that the number of commissioners mentioned in said order "are three, instead of five, the number now required," the former order was rescinded, and it was ordered that a new writ, directed to five commissioners, do issue, directing said commissioners to partition said land amongst the said parties according to their respective

---

[1] Who was a mortgagee.—REPORTER.

interests therein. Upon this order there is an endorsement signed by the clerk of the court, in these words: "I, this day, 14th day of May, 1885, mailed to plaintiffs and defendants notice of order of partition." In pursuance of this last mentioned order a writ of partition was issued, directed to the five commissioners therein named, requiring them to make partition of said land, by setting apart to each of the said parties "a proportion of said real estate to which they may be entitled respectively as heirs at law and distributees of the said June Woodward, deceased," with the usual provision that, in case such partition cannot be fairly made, a part or the whole be set apart to one or more of said parties, they making compensation to the others, so as to bring about equality of partition, or in the event that partition cannot be properly effected in either of these modes, then that the commissioners may recommend a sale, certifying their appraisement of the value of said land.

On August 18, 1885, these commissioners, all of whom appear to have acted, made their return, certifying that the land could not be fairly divided, and therefore recommended a sale of the entire tract, appraising its value at $670. After this return was made, to wit, on August 22, 1885, Mr. Hucks, the attorney who commenced the action for partition, and who seems to have been regarded as counsel for all the parties, signed a paper consenting that the heirs of June Woodward, notwithstanding this return recommending a sale had been made, might make a settlement among themselves, provided the expenses already incurred should be provided for, and that the first of September be the period allowed for the same. These provisions not having been complied with, and so far as we can perceive from the evidence, no effort made to do so, on November 14, 1885, Mr. Hucks took an order for the sale of the land, which order was granted by Judge Aldrich at chambers while still in Georgetown, which is in the third Circuit, to which Judge Aldrich had been duly assigned. In pursuance of this order the land, after due advertisement, was offered for sale at public outcry, and bid off by one Ehrich at $330, who transferred his bid to the defendant Elliott, who has received titles for the same; but there has been no order confirming the sale.

A few months afterwards, to wit, on May 26, 1886, the present action was commenced by Silla Woodward and the then surviving children of the said June Woodward, against the said William F. Elliott and the heirs at law of June Woodward, the younger, one of the children of June Woodward, sr., who had died intestate on July 14, 1884, leaving as his heirs at law his widow and children named in the record, for the purpose of setting aside the sale made under the proceedings in the former action, and for partition of said land amongst the heirs at law of June Woodward, sr.    The grounds upon which the sale is impeached are substantially as follows: 1st. Because Silla Woodward, though named as a party, and served with a summons in the previous action, was not really such because she was not named *as the widow* in the complaint or any of the proceedings, and her share as such was nowhere stated, but, on the contrary, the language of the complaint implied that she was regarded as one of the children of June Woodward, sr.    2nd. That the order of sale, as well as the sale itself, was made without the knowledge and against the wishes of all the parties, particularly Silla Woodward.    3rd. Because Judge Aldrich had no jurisdiction at chambers to make the order of sale.

All these grounds were overruled by the Circuit Judge, who rendered judgment that the plaintiffs were not entitled to the relief which they demanded; but that inasmuch as it now appeared that June Woodward, jr., had never been made a party to the previous action, inasmuch as the proof in this case showed that he had died three days before the copy-summons had been left at his late residence, his heirs at law were now entitled to have partition of the land, so as to set apart to them the share of their deceased father and husband, which was accordingly ordered, and to this part of the decree there was no exception. The plaintiffs, however, appeal upon the. several grounds hereinbefore indicated.

The fact that Silla Woodward was not named in the previous action as the widow of the intestate, and her share of his estate specifically stated, does not seem to us material.    There is not the slightest evidence that either she, or any of the parties, or the commissioners in partition, were in any way misled by such omis-

sion.   On the contrary, the testimony abundantly shows that she
was served with the summons, that she acted and was treated as
one of the parties, perhaps the most active of any, that she per-
suaded one of the persons named as commissioner to act as such,
and took a prominent part in the proceedings of the commission-
ers, and it will not do for her now to say, in face of these facts,
that she was no party, simply because she was not described as
the widow and as such entitled to one-third of the estate.   Hav-
ing been served with the summons, she either knew or ought to
have known what the complaint contained; and if there was any
erroneous statement of fact therein, or any material statement
omitted, she had ample opportunity to have such error corrected
or such omission supplied; and having neglected to do so at the
proper time and in the proper way, she cannot now be permitted
to take advantage of any alleged error or omission, especially
when, as the Circuit Judge very properly says, it is perfectly
manifest that the omission to describe her as widow and to spe-
cify the amount of her share as such, worked no injury to her
interests, as her share was recognized throughout the proceed-
ings as being that of the widow, one-third.

The second ground taken—that the order of sale was taken
and the sale made without the knowledge or consent of the par-
ties—is not in our judgment supported by the testimony.   It may
be, and no doubt is, quite true that in this case, as in many others,
the parties interested would have preferred an actual partition
rather than a sale, if the same was practicable.   But when it was
found, after diligent effort (the commissioners in partition having
spent three days in ineffectual attempts to carry out the wishes
of the parties), that this was impracticable, we think the weight
of the testimony rather tends to show that the parties quietly
acquiesced in what seemed to be inevitable; certainly it does
not show that they made any active opposition to the course
recommended by the commissioners unanimously, one of whom
was specially chosen by the plaintiff Silla, and induced to act
solely by a willingness to gratify her.   So we think the testi-
mony shows that the parties were fully informed that the com-
missioners had determined to recommend a sale, and they either
knew or ought to have known that such recommendation would

be followed by an order of sale, unless some steps were taken to prevent it; and yet, although some of the parties did go to the court house to see the attorney, to whom all the parties seemed to have been willing to commit their interests, and were advised by him to employ other counsel if they were dissatisfied, and were offered the opportunity to adjust the matter amongst themselves, even after the return had been made, yet nothing was done by them to prevent the sale, which was accordingly made after due advertisement, without objection from any quarter, although there is testimony tending to show that some, if not all, of the parties had actual notice of the time and place of the sale. Under these circumstances, and from a review of all the testimony in the case, we are unable to discover any ground upon which the plaintiffs can claim the relief demanded under section 195 of the Code, or under any other provision of the law. We are unable to discover the slightest evidence that anything was done or omitted which was calculated to mislead these parties or keep them in ignorance of their rights or interests in the premises; and if they have been so misled, it is due either to their own fault or to their ignorance, for which the law provides no remedy.

The only remaining inquiry is, whether Judge Aldrich had jurisdiction to grant the order of sale *at chambers*. This question must be determined by reference to the statute law. Section 2115 of the General Statutes reads as follows: "The judges of the Courts of Common Pleas shall have power at chambers to grant writs of prohibition and mandamus, and to hear and determine motions to set aside or stay executions, in the same manner, in every respect, as if the court was actually sitting; and with the consent of all adult parties in a cause, and of the guardians *ad litem* of infants therein, to hear and determine any matter not properly triable before a jury; and the parties respectively shall have the same right of appeal as if the decision was made in open court.

"*They may hear and determine actions for partition, and may grant all writs and processes in such actions at chambers, in the like manner and with the same effect as are now granted in term time.*"

It will be observed that in this section power is conferred upon a Circuit Judge at chambers to exercise several specified powers: 1st. To grant the writs named, to which the writ of *certiorari* has been added by an amendment to this section, passed in December, 1882, 18 *Stat.*, 38. 2nd. To hear and determine motions to set aside or stay executions. 3rd. *With the consent of the parties*, to hear and determine any matter not properly triable before a jury. 4th. To hear and determine actions for partition. The precise question presented by this appeal is, whether the consent of the parties is necessary to enable a Circuit Judge to hear and determine an action for partition. It seems to be pretty clear that no such consent is necessary to the exercise of the two first powers, inasmuch as no such qualification is mentioned when those powers are conferred, and it seems to be equally clear that consent is necessary to the exercise of the third power, inasmuch as such a qualification is expressly mentioned when that power is conferred. But when the fourth power—that herein brought in question—is conferred, we find no such qualification expressed, and, on the contrary, it is conferred in terms as absolute and unqualified as those which were employed in conferring the first and second powers. We do not, therefore, see any warrant for interpolating any qualification in the exercise of a power which the legislature has seen fit to confer in unqualified terms.

In addition to this we find in the section of the general statutes the words which we have italicized above, by which the power here under consideration was conferred, are placed in a separate paragraph from the previous part of the section where one of the powers conferred is subject to the qualification that the consent of parties shall be obtained; and the only word in the paragraph which we have italicized which refers, or in any way relates to what has gone before is the word "they," which, of course, only relates to the officers previously spoken of—the judges of the Court of Common Pleas—and not to the powers conferred upon such officers. Now if, in the preceding paragraph, *all* the powers conferred had been conferred with the qualification contended for, there might be better reason for saying that such qualification must be annexed to the power

conferred in the additional paragraph, but such is not the fact. It is true that when this section was amended by the act of 1882, above referred to, and the section repeated with the amendment inserted at its appropriate place, we do not find it divided into two paragraphs, as it is in the general statutes, yet as the sole object of this amendment manifestly was simply to add the writ of *certiorari* to those mentioned in the section as it was originally adopted, we do not think the circumstance that the section as it appears in the amendatory act, is not divided into paragraphs is entitled to any consideration.

But what is much more important, as was well argued by counsel for respondent, if the view contended for by appellant should prevail, then the second paragraph of the section as originally adopted, was wholly unnecessary. For the third power conferred in the first paragraph—"to hear and determine any matter not properly triable before a jury"—would, by its terms, embrace the power to hear and determine an action for partition, as that unquestionably is a matter "not properly triable before a jury," and hence there would have been no necessity to add another paragraph conferring the same power in express terms, and the only reason for doing so must have been to confer that specific power without the qualification—consent of parties—which had been annexed to the general class of powers, under which the one here brought in question would fall. For there can be no doubt that under the third power conferred in the first paragraph of the section, a judge at chambers would have jurisdiction to hear and determine an action for partition, *with the consent of the parties*, as it would unquestionably be a matter "not properly triable before a jury," and if so, where would be the necessity for conferring such a power, in an additional paragraph, without any such qualification annexed, unless it be for the purpose of declaring that the power so specifically conferred might be exercised without the consent of the parties?

It is argued that the view which we have adopted would lead to the conclusion, that a judge at chambers in the County of Sumter might hear a case for the partition of land in Georgetown, inasmuch as section 2115 contains no limitation upon his powers. But such limitation may be found in section 144 of the Code,

which requires that actions for the partition of real property must be heard in the county where the land or some part thereof is situated. For although the Court of Common Pleas has general jurisdiction to hear and determine all actions for partition of real property, yet the section of the code just cited limits the exercise of such jurisdiction to the court while sitting for the county where such land or a portion of it lies. And we do not see why, in the same way, it may not be said that while the power conferred upon a judge at chambers to hear and determine actions for partition by section 2115 of the General Statutes does not appear to be limited by the terms of that section, yet it is limited by section 144 of the Code, so that it can only be exercised in the county where the land or some portion of it lies. In this case it appears that Judge Aldrich, when he granted the order here in question, was sitting at chambers in Georgetown County, where the land lies.

It seems to us, therefore, that Judge Aldrich had jurisdiction to grant the order of sale here brought in question. This order having been granted prior to the passage of the act of December, 1885 (19 *Stat.*, 314), we have not undertaken to consider what effect, if any, that act may have had upon the section of the general statutes herein construed.

The judgment of this court is, that the judgment of the Circuit Court be affirmed.