## SMITH v. TANNER.

1. A mother conveyed land to her children, to be equally divided between
them after her death by three appraisers of their selection. In 1854,
after her death, these children, and the husbands of the married daugh-
ters, under hand and seal, appointed two agents to sell the lands and
divide the proceeds, and gave bond to ratify the acts of their agents
and to make titles to the purchasers. These agents accordingly sold
these lands in two tracts in 1854, L., a son, buying one tract, and S.,
the husband of a daughter, buying another, and a deed was executed
to L., signed by the parties in interest and their husbands, but Mrs. S.
did not sign nor relinquish her inheritance thereon, as required by law.
All parties received their share of the proceeds of sale, husbands re-
ceipting for their wives' portions. S. died in 1886 (the tract purchased
by him having been previously sold for his debts), and in 1887 his
widow brought action against defendants, as alienees, for the recovery
of the tract of land purchased by L. *Held*, that the sale should be sus-
tained as a family settlement, and that, under the circumstances, a

deed, with a proper relinquishment of inheritance, would be presumed from lapse of time.

2. An agreement for partition, signed by married women and their husbands, and by the other parties in interest, may be specifically enforced by a Court of Equity.

Before WALLACE, J., Spartanburg, October, 1888.

Action for recovery of real property, brought by Charity Smith on June 13, 1887. The opinion states the case. The Circuit decree was as follows:

It appears that Mary Linder died in the year 1854, leaving a real and personal estate, and leaving surviving her her children, ten in number, and two grandchildren of a predeceased daughter. Her husband had died before her. All of the children were of full age at the time of her death. Her grandchildren were minors, and their father was their guardian. All the children and the guardian of the grandchildren entered into a written agreement, by which it was stipulated that certain persons therein named should be the agents for all who were interested, and who should, as such agents, collect also the property of Mary Linder, real and personal, and divide the proceeds among those entitled according to their respective rights. These agents immediately proceeded to sell the whole estate left by Mary Linder, collected the money, and divided it among her heirs. The deeds to the real estate sold were executed, not by the agents, but by the heirs, save plaintiff, Charity Smith, one of the heirs of full age, and the two grandchildren, who did not sign the deeds. The agents received the purchase money for the land. There is some question whether Charity Smith or her husband received from the agents the share of Charity. The shares of the two grandchildren were received by their guardian, and by him paid to them on the attainment of their majority.

The plaintiffs, Charity Smith and the two persons who were minors at the time of the above recited transaction, bring this action to recover their shares in the land. The two grandchildren were born, one in 1841 and the other in 1843. The land was sold in 1854. This brief statement of facts is decisive of the case, and the complaint must be dismissed. Although Charity Smith

did not sign the deed, she is bound by her agent's act, duly appointed, who sold the land and received the purchase money. Besides, it has been more than thirty years since the purchaser, and those who held under them, have been in possession of the land under paper title. The two minors were both of age in 1864, and any right they might have had to a recovery is long since barred by lapse of time.

It is ordered and adjudged, that the complaint be dismissed.

*Messrs. Stanyarne Wilson* and *Nicholls & Moore*, for appellant.

*Messrs. Duncan & Sanders*, contra.

March 8, 1890.   The opinion of the court was delivered by

MR. CHIEF JUSTICE SIMPSON.   Mary Linder, in 1848, conveyed her property, including the real estate in question here, to her 10 children, upon certain terms, &c., the land to be divided at her death into lots, as nearly equal as possible, by three disinterested men. She died in 1854. Soon afterwards, the children and their husbands. Charity Smith, plaintiff, being one of said children, and at that time the wife of A. E. Smith, entered into a written agreement, by which they appointed two agents, authorizing them to sell the property and to divide the proceeds among the grantees, and at the same time entering into bond to abide the agreement.   In October, 1854, the agents sold the land in two lots, A. E. Smith, the husband of Charity, becoming the purchaser of one of them; and it seems that A. E. Smith received his wife's share in both tracts. This tract bought by A. E. Smith was afterwards sold as his land by the sheriff. The other tract was bought by one Simpson Linder, which, by subsequent transfers, finally went into the possession of the defendant, Tanner. In the deed of the children to Simpson Linder, Charity did not join.

A. E. Smith, husband of Charity, died in 1886; and in June, 1887, the action below was commenced by the said Charity and the other two plaintiffs, children of a deceased daughter of Mary Linder, to recover their alleged interest in the lands in possession of Tanner. At the trial, his honor, Judge Wallace, dismissed the

complaint.  Charity Smith has alone appealed. · The Circuit
Judge, in his decree, after stating the facts as above, concluded
as follows : "This brief statement of facts is decisive of the case,
and the complaint must be dismissed.  Although Charity Smith
did not sign the deed, she is bound by her agent's act, duly ap-
pointed, who sold the land and received the purchase money.
Besides, it has been more than thirty years since the purchaser,
and those who held under him, have been in possession of the land
under paper title.  The two minors were both of age in 1864, and
any right they may have had to a recovery is long since barred
by lapse of time.  It is ordered and adjudged, that the complaint
be dismissed."  It is proper to state here, that the question of
title having been set up by Tanner, several issues were referred
to a jury, all of which were affirmed in favor of Tanner.

Appellant's exceptions raise several questions on the charge of
his honor, and also assail the correctness of the decree.  The argu-
ment of appellant's counsel, however, is addressed principally to
two alleged errors in the decree, to wit : That his honor erred in
holding (1) that the family agreement appointing agents to sell
the land, &c., referred to above, bound the plaintiff, Charity, and
therefore she could not recover ; and (2) that there had been more
than 30 years since the purchaser, and those holding under him,
had been in possession, &c., which barred plaintiff's claim.

There is no doubt but that the agreement referred to was made,
all parties signing it, and that the agents appointed acted by sell-
ing the land without opposition or protest from any one, and that
the proceeds were divided, the husband of the appellant receiving
her share.  It was also in evidence that the appellant did not join
in the deeds executed to the purchasers, as the law required, so
as to convey the inheritance of a married woman.  It is true, too,
that more than 30 years had elapsed since said sale by these agents.
Now, did his honor err in his rulings upon these facts ?  We
think the agreement, and the proceedings thereunder, was in the
nature of a family settlement, and intended to effect a family set-
tlement of the rights and interests of the parties concerned (7
Amer. & Eng. Encyclop. Law, 807), of the joint tenants under
the deed of Mary Linder, all of whom, except two, were her chil-
dren and two her grandchildren, and it being a family settlement,

it must have the effect of such settlement. Now, the vital question is, where there are married women interested in real estate involved in such settlement, will their title pass by the sale of agents appointed to sell, in the absence of the execution of a regular deed in the mode required by statute for married women to convey their inheritance? Or, rather, after the consummation of such settlement, can the married woman dispute the title of the purchasers on the ground that no such deed had been executed, especially after the lapse of 30 years or more, although she has only become discovert within a short time before she brings action?

Courts of Equity have uniformly upheld and sustained family arrangements in reference to property, where no fraud, imposition, or overreaching appears, with a "strong hand." As is said in the text-writers: "In family arrangements, an equity is administered in equity which is not applied to agreements generally." Story Eq. Jur., § 132; Pom. Eq. Jur., § 851; *Trigg* v. *Read*, 42 Amer. Dec., 461; *Bossard* v. *White*, 9 Rich. Eq., 483; *Stockley* v. *Stockley*, 1 Ves. & B., 30. And such arrangements will be held binding when, in cases between strangers, the like agreements would not be enforced. It is needless to go into the reason of this doctrine. It is sufficient to say that it is well established, and has often been applied, both in England and America. In the recent case in our court of *Kennedy* v. *Badgett* (19 S. C., 591), an arrangement similar to the one here was upheld, though married women were of the family, and entered into the agreement by the execution of papers with their husbands.

If this was a contest between the original parties to the arrangement, one or more trying to break it up as against the others, the Court of Equity would hardly lend its aid to such an effort; and we see no reason why Tanner, who claims through this arrangement, should occupy any worse position than the parties themselves. True, married women, before the Constitution of 1868 was adopted, could not renounce their inheritance or convey real estate, except in strict accordance with the mode prescribed by statute; but this was not universal. In partition cases by the court, their title passed sometimes without this formal mode. The proceeding here was, in substance, a partition, not by the court, it is true, but by regular appointed agents, authorized to sell; and,

if necessary, the court might enforce and consummate the sale by specific performance.

We think the decree of his honor may be sustained upon the above grounds, and also upon the further ground of the lapse of time. In *Sasportas* v. *De La Motta* (10 Rich. Eq., 51), Chancellor Wardlaw said : "The interests of mankind require us to presume that the long enjoyment of a claim is rightful, and, in protection of such claim, that a grant of land from the State, or of administration from the ordinary, or any muniment of title, once existed, and if not produced, that it has been lost by devouring time"—citing *Smith* v. *Smith*, Rice, 232, and *McQueen* v. *Fletcher*, 4 Rich. Eq., 152. See, also, *Bossard* v. *White*, 9 Rich. Eq., 483; and *Willingham* v. *Chick*, 14 S. C., 103; *Hutchison* v. *Noland*, 1 Hill, 224. This case seems to us to be a very strong case for the interposition of this presumption. Here, the land was sold in 1654 by the direct agreement and direction of all the parties interested ; the object of the sale being to effect a partition of the land. After the sale, the proceeds were distributed by the appointed agents, all acquiescing. More than 30 years have elapsed, and now action has commenced on the ground that the plaintiff was a married woman, and though she signed with the others all the preliminary papers leading up to the sale, she did not renounce her inheritance to the purchaser. Under such circumstances, the law might well presume, under the authorities *supra*, that such a deed was once executed, and that it had been lost by "devouring time."

It is the judgment of this court, that the judgment of the Circuit Court be affirmed.