## 7065

### WEATHERSBEE v. WEATHERSBEE.

1. PARTITION.—WIDOW IS BARRED OF CLAIM OF DOWER by joining in partition of lands in which she now claims dower without setting up claim of dower and by going into possession of portion of the lands under partition decree.

2. IBID.—JURISDICTION.—Decree in partition consented to in writing by widow in her own right and as guardian *ad litem* and to be signed by Judge Aldrich at chambers, and signed by such Judge in another county than the one in which the lands are situate and the proceeding pending is valid.

3. WILLS—LIFE ESTATE—TRUSTS.—A devise to M., daughter of R., and to such children of R. as may be living at his death, together with the increase of said property by rents or otherwise at the time of the death of R., in fee to the children of R. after his death, carries a life estate by implication to R. or makes him a trustee to hold the property and collect the rents for his children.

Before GAGE, J., Barnwell, February, 1907. Affirmed.

Two actions: (1) by Mattie C. Weathersbee *et al.* against M. F. Weathersbee *et al.;* (2) Annie E. Weathersbee *et al.* against M. F. Weathersbee *et al.* From Circuit decree, both plaintiffs appeal. The portion of the will in question is:

Second. "The major part of my homestead lot in said town of Williston, containing five acres more or less, about two and three-fourths acres· in one part, and some three acres in another part—it being divided by a street of said town and adjoin said street, the public road and lands of J. H. Sprawls—also all my personal property in which I have a homestead exemption, I give, devise and bequeath to Madelle Lucelle, daughter of R. A. Weathersbee, and to such future lawful child or children of said R. A. Weathersbee as may be living at the time of his death, together with all and whatever increase in the value of said property by rents or otherwise at the time of the death of said R. A. Weathersbee—to have and to hold to the said child or children, his, her or their heirs and assigns forever, from and

immediately after the death of the said R. A. Weathersbee.

Third. "I give and bequeath to Allen L. and Robert A., children of Martin Weathersbee, each, one hundred dollars, to be paid to him when he becomes twenty-one years of age.

Fourth. "I give and devise to Vina Wright a house and lot on the corner of my residence lot, adjoining land of Martha Smith on the east and street in the rear of residence lot and containing about sixty by seventy feet, to have and to hold to the said Viney Wright for the term of her natural life, and from and immediately after her death said lot shall be taken and held by my executor, subject to the several limitations of second clause of this, my will, and to be disposed of in the same manner as other land therein devised, but if no child of the said R. A. Weathersbee be living at the time of his death, said property is hereby devised to the children of Martin Weathersbee in equal shares, meaning the whole of the property mentioned in this and the second clause of my will.

Fifth. "I give and bequeath to Emma Stallings one hundred dollars, to be paid to her by my executor as soon as practicable after my death, and said executor is hereby authorized and directed to sell any personal property of my estate in order to make such payment.

Sixth. "The rest, residue and remainder of my estate not hereinabove disposed of I give, devise and bequeath to such lawful child or children of R. A. Weathersbee and Martin Weathersbee and his or her legal representatives as may be living at the death of R. A. Weathersbee."

*Mr. B. T. Rice,* for appellants, cites: *Decree of Judge Aldrich was a nullity:* 16 S. C., 276; 24 S. C., 392; 27 S. C., 368; 45 S. C., 8; 22 N. C., 746; Code of Proc., 144; 85 U. S., 350; 1 Black on Judg., 279; 2 Brev., 621. *As to the construction of the will:* 2 Blackstone, secs. 173, 107; Fearne on Con. Rem., sec. 513; 77 S. C., 454; 22 Stat., 586. *Trust is never raised by implication:* 2 Pom. Eq. Jur., sec. 1011;

20 L. R. A., 252; 2 Rich. Eq., 268; Hill on Trustee, sec. 144; 13 Rich. Eq., 101. *R. A. W. took a life estate in property descended to his heirs:* 23 S. C., 228; 2 Minor Institute, 369; Fearne on Rem., 385.

*Messrs. Bates & Simms, Hendersons,* and *Robert Aldrich,* contra.

*Messrs. Bates & Simms* cite: *Court should carry out the family settlement:* 32 S. C., 259; 35 S. C., 194.

*Messrs. Hendersons* cite: *Widow is barred of dower:* 1 Rich. Eq., 275, 223. *Consent to the partition decree gave Judge jurisdiction:* 27 S. C., 368; 45 S. C., 8.

November 24, 1908. The opinion of the Court was de- livered by

MR. CHIEF JUSTICE POPE. In the two foregoing cases Judge George W. Gage made the following decree: "The cause first entitled is an action for dower. The cause next entitled is for partition. The subject of the action is the same in both causes; and so are the parties, except Annie C., plaintiff, and widow in the first case, and Madelle Weathersbee, who is defendant in the last case.

"The subject of the actions is a plantation containing 530 acres, a house and lot at Williston described as the homestead lot, three brick stores at Williston, and a vacant lot at the same place, and described as the burnt or Garbel lot, four parcels all told.

"The title upon which plaintiffs rely, and defendants too, is a deed made 4th January, 1879, by Ashley M. and Martin F. Weathersbee, to their father, Allen J. Weathersbee. Allen is now dead, so is Ashley M. The latter left his wife, Annie C., and his children, Mattie, Mary and Elizabeth. The deed from sons to father (*supra*) limited the fee thus: 'To Allen and his wife, Mary C., for their lives, or the life

of that one who should survive the other; remainder to
Ashley, Martin and Robert (another brother), share and
share alike, the children of either of the three who might be
dead at the termination of the life estate to take the dead
parents' share *per stirpes.'*

"The defendant, E. E. Weathersbee, is the wife of Rob-
ert, and she claims title to two lots at Williston, first, under
deed from R. A. Weathersbee, dated 5th November, 1894,
and recorded Book 7 E., page 48; and, second, under a deed
from F. H. Creech, sheriff, dated 16th March, 1899, and
recorded Vol. 6 R., p. 556.

"Counsel for the plaintiff admitted at the hearing that
this title was not subject to partition.

"The defendant, B. L. Weathersbee, is the wife of Mar-
tin F., and his conveyee of some of the property in issue.

"To the action for dower the defendants plead as a
defense, that heretofore, in 1898, the plaintiff, Annie C.
Weathersbee, and her three children, Mary, Mattie and
Elizabeth, joined with Martin and Robert Weathersbee in
an action for the partition of these same lands; that a de-
cree was rendered therein by Judge James Aldrich; and
that, of the farm lands of 530 acres, the parties actually
went into possession of their several parts and have since
enjoyed them severally. Manifestly, if that decree is lawful
then the action for dower must fail.

"The plaintiff assails the decree, first by the contention
that the Court had no jurisdiction to make it at Bamberg,
out of Barnwell county, the locus of the land; and, second,
by the contention that the decree is erroneous, in that it
undertakes to vest a title in Annie C. Weathersbee, contrary
to the terms of the deed from Martin and Ashley Weath-
ersbee to their father, Allen J. And to correct that error,
plaintiff's three daughters move to open the decree. That
motion is ancillary to this action, but independent of it, and
will be determined by a separate order.

"At the foot of Judge Aldrich's decree there is written
this consent: 'We consent to the above decree being signed

by the Hon. James Aldrich, Judge of the Second Circuit, at chambers.' That is signed by Annie Weathersbee in her own right and as guardian *ad litem* for her children. I am of the opinion that Judge Aldrich had jurisdiction to make the decree, and these parties are bound by its terms.

"Plaintiff relies on sec. 144 of the Code of Procedure and *Woodward* v. *Elliott,* 27 S. C., 368, 3 S. E., 477. In the case cited the issue here did not arise. The decree there was made in Georgetown, and the land there lay in Georgetown. That cause was decided in 1887. After that time and in 1894, the Code of Procedure was amended by providing, that upon consent of the parties, the hearing might be had in a county 'other than that in which the property is situated.' If the parties consented the decree was lawful. The statute does not prescribe how the consent shall be evidenced. In the case then pending there was no contest. No issue was made by the pleadings and no issue was tried by the Judge. All the parties were represented by one attorney, a gentleman of character and culture. The parties to the cause agreed in writing to the terms of partition, they made it themselves, and they signed the evidence of it with their own seal. The Circuit Judge merely confirmed their action, and the parties consented in writing that he might do so at chambers; and their conduct, as well as the character of the act, implied that it might be done anywhere. The Code plainly and wisely requires that actions involving the title to land (and personal property in one instance) shall be tried in the county where the subject is located. Title IV, which embraces sec. 144, uses the words, 'place of trial' as synonymous with venue. The place of the trial is the place where the action is brought, and where the record is preserved for the guidance of those who may be interested in land titles. The same statute directs how the venue may be changed from one county to another, and the record transferred thither. Until the record has been thus transferred, the trial is deemed to be had in the county named in the summons. In the instance

under review, the place of the trial has always been in Barnwell, and the record is now there and has always been. The 'hearing' was only had in Bamberg, for the convenience of the parties, or their attorney. To conclude that the mere hearing of a cause across a county line would invalidate a judgment would be hazardous, and make the statute law an unreasonable thing. And if the letter of the record must be appealed to, it does not disclose that the 'hearing' was had at Bamberg, but only in the 'signing.' A Circuit Judge often hears in one county and signs in another county, a practice justified by necessity and by the decisions.

"Furthermore, the parties have actually executed the decree. The plaintiff and her daughters are in possession of 170 acres of the land which was partitioned.

"I am, therefore, of the opinion that the demand for dower cannot be sustaned, and the complaint, therefore, is dismissed.

"As to the partition: It is admitted on all hands that if the decree of Judge Aldrich, hereinbefore referred to, is valid, then the plaintiffs are not entitled to partition of the lands which by that action were partitioned in severalty to plaintiffs and defendants. I conclude, therefore, that the plantation of 530 acres of land, last described in the complaint, is not subject to partition. So far as it is concerned the prayer of the complaint is denied.

"It is not denied by the defendants that the plaintiffs are entitled to partition of the storehouse and lot occupied once by Rountree, in which plaintiffs have an undivided one-half interest; and to a partition of the brick store and lot, in which plaintiffs have an undvided one-third interest. So much appears from the decree of Judge Aldrich upon which the defendants stand, and which I have already found to be a valid decree. The complaint further puts in issue the homestead lot, or as it is sometimes called the residence lot.

"And the argument at bar made another issue which is mooted in this testimony. That is the northern boundary

of the homestead.   The plaintiffs contend that when the homestead was assigned, the northern boundary line ran so close to the residence that entrance to it was practically closed, and thus a vacant lot was left betwixt the homestead and the railroad or street.   The return of the appraisers thus describes the lot assigned, 'One tract of land containing house and lot adjoining lands of S. C. R. R. and Mrs. Martha Smith and A. J. Weathersbee, also a lot of about three acres, bounded by a street separating from above lot, and on south by J. H. Sprawls and west by public road.'   The appraisers differ in their testimony about the disputed line. The will of the testator describes the homestead lot as embracing nearly five acres.   I am of the opinion that the northern boundary is the railroad or street.

"The next issue is one of law, and it arises upon a construction of the will of Allen J. Weathersbee.   That instrument was manifestly prepared by a non-professional hand. In the second item, the testator undertakes to dispose of the major part of the homestead.   The minor part is devised in the fourth item; and there the testator refers to the homestead lot as the residence lot.   That he gives to Viney Wright for her life.

"The plaintiffs contend that the testator limited the title by executory devise to certain persons who might be alive at the death of Robert Weathersbee; and that the title before the event, betwixt death of testator and death of Robert, was intestate property in the heirs of the testator, and subject to partition betwixt them.

"The defendants contend, that the testator intended Robert A. to enjoy the property for his life, and that he took by implication an estate for his own life, or that he became trustee to hold the property and collect the rents therefrom, for those who might be entitled at his death.

"In my opinion, the testator intended one or both of these things; but the weight of the argument is that he intended the last.   Here, as in every case, the business of the Court is to ascertain from the whole instrument the intent of the

maker. That ascertained, it must be executed if lawful. It is not always possible, if indeed it be desirable, to characterize by accurate definition the estate or interest which a testator has created to carry out his intent. In much confusion of speech the intent may yet be manifest. In the case at bar, the testator plainly stated the ultimate objects of his bounty. They were the children of Robert A. He further plainly stated the time at which these objects should take. That was at Robert's death. He further plainly stated what subject matter they should take. That was the major part of the homestead; 'together with * * the increase in the value (thereof) by rents or otherwise, at the time of the death of the said Robert;' and, further, the minor part in the same way, after Viney Wright's death. Manifestly the rents were to be collected, and if the children of Robert are entitled to have them at Robert's death, from testator's death to Robert's death, then the plaintiffs cannot have them. The plaintiffs do not demand aught else than the rents, which is the use.

"But the will expressly declares that such rents shall belong to the children of Robert. In my opinion such a direction is not unlawful. A gift by will of rents of land to a person for a fixed period, to be paid at a fixed time, is lawful; and if no trustee is named to hold the title and possession of the corpus, then the Court will name such a trustee. In this case a trustee is named in the person of the executors.

"I am, therefore, of the opinion that the plaintiffs are not entitled to partition of the home lot, or any part of it.

"Thus all the issues made in the pleadings and testimony and argument have been passed upon.

"Any of the parties may apply at the foot hereof for any order to carry out the views expressed herein; and for that purpose application can be made to me or some other Circuit Judge."

Thus it will be seen that the Circuit Judge first passes on the question of dower, and holds that there is no dower. We sustain the Circuit Judge in this finding. *Smith* v. *Tanner,* 32 S. C., 259, 10 S. E., 1008; *Smith* v. *Oglesby,* 33 S. C., 194, 11 S. E., 687.

The second question related to the partition. It is agreed on all sides that if Judge Aldrich's decree is valid no question of partition arises. It is claimed that the decree of Judge Aldrich is not a legal decree because signed at Bamberg, not in Barnwell, the reasons given by the Judge which have hereinbefore been reported are satisfactory to this Court; it holds that the decree of Judge Aldrich, although signed at Bamberg, was a valid decree; it was a consent decree and might be considered as a family settlement. *Smith* v. *Oglesby, supra; Smith* v. *Tanner, supra.*

The third question is as to the effect of the will of Allen J. Weathersbee. We agree with the Circuit Judge that the intention must govern.

The reasons assigned by the Circuit Judge for his conclusions are entirely satisfactory to this Court.

The judgment of the Circuit Court is affirmed.